# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

BAINBRIDGE MANAGEMENT, LP,   )
     Plaintiff                  )
                                 )
     v.                          )        No. 2:03 CV 459JM
                                 )
TRAVELERS CASUALTY AND      )
SURETY COMPANY OF AMERICA,  )
     Defendant.            )

## MEMORANDUM and OPINION

The parties in this case filed cross-motions for summary judgment. The court has entered a separate order denying plaintiff Bainbridge Management, LP's ("Bainbridge") motion, and granting defendant Travelers Casualty and Surety Company of America's ("Travelers") motion. This memorandum and opinion explains the basis for the court's decision.[1]

Bainbridge brought this action seeking a declaratory judgment and compensatory damages. Specifically, Bainbridge seeks a declaration that it is entitled to coverage under a policy of directors and officers liability insurance[2] issued by Travelers

---

[1] The court notes that on April 12, 2005, plaintiff Bainbridge filed a notice stating that one of its principals, Peter Rogan, personally knows this judge. Travelers filed no response to that notice, and neither party ever moved for disqualification. After receiving the notice, this judge considered whether his impartiality might reasonably be questioned. Over a decade ago, this judge served as a director on the board of a not-for-profit hospital of which Rogan was the chief executive officer. Since that time, this judge has, on a few occasions, encountered Rogan in social settings. Because this judge was, and is, of the opinion that his impartialty cannot reasonably be questioned, there is no basis for disqualification under 28 U.S.C. § 455.

[2] Policy no. 005 LB 103073143B, Travelers Property Casualty Healthcare Directors, Officers and Trustees Protection PLUS+ Policy, policy period 12/31/00,

to Access Community Health Services, Inc. ("Access"), under which Bainbridge was a named additional insured. Bainbridge alleges that the policy covers defense costs incurred in defending criminal and civil actions brought against Bainbridge because of its fraudulent conduct while it acted as the contract manager of Edgewater Medical Center ("Edgewater"). In addition, Bainbridge seeks compensatory damages for what it alleges to be Travelers' breach of its duty of good faith and fair dealing.

RULE 56 of the FEDERAL RULES OF CIVIL PROCEDURE directs this court to enter a summary judgment if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). When considering the motion, the court must construe all of the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Laborers' Pension Fund v. RES Environmental Services, Inc.*, 377 F.3d 735, 737 (7th Cir. 2004). In a case involving cross-motions for summary judgment, that means that each party receives the benefit of all reasonable inferences drawn from the record when considering the opposing party's motion. *See Tegtmeier v. Midwest Operating Engineers Pension Trust Fund*, 390 F.3d 1040, 1045 (7th Cir. 2004); *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998). In the present case, the parties agree that there are no

---

12:00:00 AM, to 12/31/01, 12:00:00 AM. (Ex. B in Vol I of the Exhibits to Bainbridge's Motion for Summary Judgment). In this memorandum the court will simply refer to "the policy" or "the insurance."

disputed issues of fact, that the disputed issues are purely legal, and that the case should be resolved through the parties' cross-motions.

Because the parties agree on all material facts, the court will simply incorporate them in the discussion that follows. Despite the parties' extensive briefing, this case is really quite simple, and one issue is dispositive.[3] For that reason, a number of issues the parties have briefed—such as whether Bainbridge gave Travelers timely notice—will not be discussed because any opinion on them would be advisory and only unnecessarily complicate the court's decision.[4] The court will further simplify its decision by discussing, for the most part, only Travelers' motion. This is because Bainbridge's response to that motion makes essentially the same arguments as Bainbridge makes in support of its own motion for summary judgment.

As an initial matter, the law applicable to this case must be determined. Bainbridge has briefed every issue in the case using both Indiana and Illinois law, without taking a position as to which state's law the court should apply. Travelers addresses the issue and argues that the court should apply Illinois law.

---

[3] In fact this is the position taken by Travelers, but Travelers has carefully responded to every issue raised by Bainbridge, even where Travelers believes the issue irrelevant.

[4] This also saves the court from having to discuss arguments like Travelers' assertion that because Bainbridge was only insured when performing its duties as a management organization, Bainbridge has no coverage because committing fraud is not a management duty. The court notes only that a superficial analysis suggests that this would make the policy's coverage for Loss from criminal proceedings (included in the definition of a Claim, section II(B)(3)), and for Defense Expenses in connection with fraudulent acts and criminal violations (section III(B)(2)), illusory.

Because this is a diversity case, the court must apply Indiana's choice of law rules, and use the same body of law that an Indiana state court would use. *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915 (7th Cir. 2006). In a contract case, when, as here, the contract at issue does not contain a choice-of-law provision, Indiana applies the law of the forum with the most intimate contacts to the facts. *American Employers Ins. Co. v. Coachmen Industries, Inc.*, 838 N.E.2d 1172, 1178 (Ind. App. 2005). The contacts to be considered are: 1) the place of contracting; 2) the place of negotiation; 3) the place of performance; 4) the location of the subject matter of the contract; and 5) the domicile, residence, nationality, place of incorporation and place of business of the parties. *Id.* (citing *Restatement (Second) of Conflict of Laws* § 188 (1971)). These contacts are evaluated according to their relative importance, and when the place of negotiating and performing the contract are the same, that forum's law will normally apply. *Id.*

As Travelers argues, the present case involves an insurance contract applied for by and issued to an Illinois corporation, to cover the activities of it and its related entities occurring in Illinois. The only connection with Indiana is that Bainbridge's main office is located in Merrillville, Indiana.[5] Bainbridge was an additional insured under the policy issued to Access because of its contract with Access to perform management duties for Edgewater, also located in Illinois.  It is clear that the forum with the most intimate contacts in this case is Illinois, and the court will apply Illinois law.

---

[5] The court notes that throughout this case Bainbridge has been referred to as an "Indiana limited partnership." That term has no meaning for jurisdictional purposes. After inquiry, the court is satisfied that diversity jurisdiction exists. *See* DE # 21, 24.

Bainbridge was named in Access' application for the policy as a successor to an Insured (Braddock Management, LP) who was added to the policy by endorsement, and so became an Insured[6] under the policy. The policy is a "claims-made" policy, that is, one that limits coverage to claims made during the policy period, instead of to liability-creating events—"occurrences"—that occur during the policy period. *See Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1089 (7th Cir. 1999); *Central Illinois Public Service Co. v. American Empire Surplus Lines Ins. Co.*, 267 Ill. App. 3d 1043,1048, 642 N.E. 2d 723, 726, 204 Ill. Dec. 822 (1994) ("The major difference between a claims made and an occurrence policy lies in the risk insured. In an occurrence policy, the risk is the occurrence itself, whereas in the claims made policy the risk insured is the claim brought by a third party.")

The policy obligates Travelers to pay Loss (which includes Defense Expenses, generally speaking, the legal fees and expenses incurred to defend a Claim) suffered by the Insureds[7] because of Claims made against the Insureds for Wrongful Acts. Among other things, Claims include civil and criminal proceedings brought against Insureds for Wrongful Acts, and Wrongful Acts include errors, omissions, misstatements, misleading statements and breaches of duty. The policy contains a number of

[6] Where the court uses capitalized terms, that is because the policy does so, signifying that the term is used as it is defined in the policy.

[7] The court simplifies things a bit in ways that do not affect the analysis. For example, the policy distinguishes between Insured Persons and Insured Organizations, which impacts who is covered when an Insured Organization indemnifies an Insured Person.

exclusions, including the one at the heart of the present case, added as section III(A)(16)

of the policy by endorsement no. 3.[8] That exclusion (hereinafter, "Exclusion 16") states:

> This insurance shall not apply to, and the Company
> [Travelers] shall not be liable for Loss including Defense
> Expenses for, any Claim made against any Insured:
> . . . . . . .
> 16. arising out of or in any way related to any Wrongful Act
> committed or alleged to have been committed, in whole or in
> part, prior to October 6, 1998.

Vol I, Ex. B, Exhibits to Bainbridge's Motion for Summary Judgment (DE # 29).

On May 17, 2001, Bainbridge, along with other organizations and individuals,

including Bainbridge's chief executive officer, Roger Ehmen, was charged by way of

indictment in the United States District Court for the Northern District of Illinois with

health care fraud. The indictment charged a scheme to defraud Medicare that began no

later than October 1996 and continued until at least October 1998. A superseding

indictment and second superseding information were later filed, on October 4, 2001,

and January 14, 2003, respectively.[9] On January 25, 2002, Bainbridge wrote to Travelers

requesting coverage of expenses in the amount of $806,229, incurred in connection with

investigating and defending the indictment on behalf of itself, Ehmen, and its former

---

[8] Although the copy of the endorsement provided to the court contains blank signature lines, Bainbridge has not argued that the endorsement was not in effect and a part of the policy.

[9] Among other changes, the first superseding indictment charged that the scheme continued from the early 1990's until at least December, 2000. The second superseding information charged that the scheme began no later than 1995 and continued until approximately December, 2000.

chief executive officer, Joann Banvich (investigative expenses only). Additional correspondence and telephone calls followed, leading to a letter from Travelers to Bainbridge dated April 4, 2002. In that letter, Travelers stated that Exclusion 16 precluded any coverage, pointed to other policy provisions which it believed also precluded coverage, and reserved its rights under the policy.

The parties continued to exchange correspondence discussing the policy's terms, and its possible coverage of Bainbridge's Defense Expenses. On January 15, 2003, Bainbridge pleaded guilty, pursuant to a written plea agreement, to count 2 of the second superseding information, charging a violation of 18 U.S.C. § 1347. That count charged a specific act, a payment of $1,171 to Edgewater on September 11, 2000, as an execution of the scheme to defraud. In the written plea agreement, Bainbridge admitted that the scheme to defraud began no later than 1995 and continued until approximately December, 2000.

On July 21, 2003, Bainbridge notified Travelers that a civil suit had been brought by a private party, Dexia Credit Local ("Dexia"), repeating many of the allegations in the criminal indictment, and requesting coverage of its expenses to defend that suit. On August 11, 2003, Travelers denied coverage for the same reasons it had given with respect to the criminal indictment. Approximately one month later, Bainbridge brought the present action in state court, seeking a declaratory judgment as to coverage and damages. On October 31, 2003, Travelers removed the case to this court. At present, the civil suit brought by Dexia remains pending.

Travelers' primary argument in its motion for summary judgment, as it asserted in its correspondence with Bainbridge prior to this action being filed, is that Exclusion 16 precludes any coverage. As noted above, that exclusion clearly states[10] that there is no coverage under the policy for Loss from any Claim "arising out of or in any way related to any Wrongful Act committed or alleged to have been committed, in whole or in part, prior to October 6, 1998." An Illinois court has found a similar prior acts exclusion to be unambiguous and enforceable as written. *General Ins. Co. of America v. Robert B. McManus, Inc.*, 272 Ill. App. 3d 510, 514-15, 650 N.E. 2d 1080, 1083-84, 209 Ill. Dec. 107 (1995). Travelers cites cases from other jurisdictions adopting the same view. *See Medical Care America, Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*,  341 F.3d 415 (5th Cir. 2003); *Gateway Group Advantage, Inc. v. McCarthy*, 300 F. Supp. 2d 236 (D. Mass. 2003).

Every count of the second superseding information to which Bainbridge pleaded guilty, like every count in the charging documents before it, incorporated the allegation that the wrongful acts specified therein were in furtherance of and/or executions of a scheme to defraud Medicare that began no later than 1995.[11] In Bainbridge's written plea agreement, which was accepted by the court, Bainbridge admitted that the scheme began no later than "in or about 1995'' and that the act to which Bainbridge was

---

[10] Bainbridge does not argue that the exclusion is ambiguous.

[11] As noted above, the original indictment charged that the scheme began no later than October 1996 and the superseding indictment charged that it began in the early 1990s. All of these dates are before the October 6, 1998 date specified in the exclusion.

8

pleading guilty, a payment of $1,171 to Edgewater on September 11, 2000, was a

knowing and willful execution of that scheme. Similarly, every count of the civil

complaint filed by Dexia Credit Local incorporates the allegation that Bainbridge's

conduct was undertaken pursuant to a scheme to defraud that began "before 1995."

Amended complaint ¶ 55 (Ex. 11 to Travelers' Motion for Summary Judgment (DE

# 34)).[12] Thus, there is no doubt that the Claim (or Claims, should the Dexia suit be

viewed as a separate Claim) is/are, at the very least, "related to" a Wrongful Act—the

scheme to defraud—that was committed in whole or in part prior to October 6, 1998.

Bainbridge admits as much in its response to Travelers' motion:

> Given the recitation of facts contained in Bainbridge's plea
> agreement, it is clear that Bainbridge's chief officer (Roger
> Ehmen) engaged [in] *a continuous course of conduct over a five
> year period* to provide kickbacks to doctors in order to
> increase admissions to Edgewater.   .   .   .   The period of time
> of the illegal scheme was from 1995 through December,
> 2001.

Bainbridge's Response (DE # 36) at 3 (emphasis added).

Bainbridge, nevertheless, argues that it "had wrongful act coverage from

October 6, 1998, through December, 2001." Id. This is wrong, first and foremost, because

it views the policy as providing occurrence-based, rather than claims-made, coverage.

As explained above, the policy covers Loss resulting from Claims against the Insureds

---

[12] Neither party has provided a copy of the complaint originally filed by Dexia two months earlier. Bainbridge does not argue that any material difference exists between that complaint and the amended complaint, and Bainbridge did not notify Travelers and request coverage until after the amended complaint was filed.

for Wrongful Acts, not the Wrongful Acts themselves. The very first provision of the policy, in large, bolded, underlined capital letters, states: **"THIS IS A CLAIMS MADE POLICY. PLEASE READ THE POLICY CAREFULLY**." The policy's insuring agreement, section I(B)(2), states that Travelers will pay "Loss resulting from Claims first made during the Policy Period against the Insured Organization for Wrongful Acts[.]" Thus, the policy provides no independent coverage of Wrongful Acts that occur on or after October 6, 1998, and excludes coverage for Claims, in their entirety, that arise from or are related to any Wrongful Acts that occurred before that date.[13]

The two reasons that Bainbridge advances to support its argument that it has coverage under the policy for the Wrongful Acts alleged to have occurred after October 6, 1998, are simply not persuasive and cannot be used to distort the plain meaning of Exclusion 16. First, Bainbridge argues that the duty to defend is broader than the duty to indemnify, and so where Wrongful Acts occur both within and outside of the coverage period, the policy applies and does provide coverage. *See Westchester Fire Ins. Co. v. G. Heileman Brewing Co., Inc.*, 321 Ill. App. 3d 622, 747 N.E.2d 955, 254 Il. Dec. 543 2001).

---

[13] While it is true, as the Illinois case Travelers relies on to support the validity of Exclusion 16 recognizes, that in a claims-made policy a limitation of coverage based on the time of underlying wrongful acts  "smacks of" occurrence coverage, the court recognized that as long as the contract between the parties is clear, nothing stops them from narrowing the "arena" of occurrences that might give rise to a claim. *General Ins. Co. of America*, 272 Ill. App. 3d at 515, 650 N.E. 2d 1083, 209 Ill. Dec. at 110.

This principal is simply not applicable in the present case, however, because Travelers had and has no duty to defend under the policy, it has only a duty to indemnify. Section VIII(A) of the policy plainly states: "The Company [Travelers] has no duty to defend any Claim. It shall be the duty of the Insureds to defend Claims." This is a valid provision making the policy different from a general liability policy in which a duty to defend exists. *See Zaborac v. American Cas. Co. of Reading, Pa.*, 663 F. Supp. 330, 332 (C.D. Ill. 1987).

Second, citing *Maneikis v. St. Paul Insurance*, 655 F.2d 818 (7th Cir. 1981), Bainbridge argues that Travelers is estopped from denying coverage because it did not file a declaratory judgment action to obtain a determination whether coverage exists. This argument, like Bainbridge's first, fails because it depends on the incorrect premise that Travelers owes Bainbridge a duty to defend. As the portion of *Maneikis* quoted by Bainbridge recognizes, "[u]nder well-settled Illinois law, only three options are available to a liability insurer *requested to defend* an insured." *Id*. at 821 (emphasis added). Those options are filing a declaratory judgment action, defending under a reservation of rights, or doing nothing at the peril of later being found to have breached the duty to defend and estopped from denying coverage. *Id*. When, as here, there is no duty to defend, the insurer need not file a declaratory judgment action. *Gould & Ratner v. Vigilant Ins. Co.*,  336 Ill. App. 3d 401,411, 782 N.E.2d 749, 757-58, 270 Ill. Dec. 190, 198-99 (2002). Where no duty to defend has been breached, an estoppel does not arise. *Id*.;

11

*Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 151, 708 N.E.2d 1122, 1135, 237 Ill. Dec. 82, 95 (1999).

In sum, the court finds that Exclusion 16 plainly applies in this case to exclude coverage for the Defense Expenses that Bainbridge contends to be a Loss covered by the policy. For that reason, Travelers' motion for summary judgment was granted, and Bainbridge's was denied. The clerk is now directed to **ENTER FINAL JUDGMENT** stating: Judgment is entered in favor of defendant Travelers Casualty and Surety Company of America and against plaintiff Bainbridge Management, LP, which shall take nothing by way of its complaint.

**SO ORDERED.**

ENTER: April 10, 2006

s/James T. Moody_____
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT